# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

**RYAN BOSHAW,**
        Plaintiff,

v.

**MIDLAND BREWING COMPANY,**
**DONNA REYNOLDS,**
**and DAVE KEPLER,**
        Defendants.

CASE NO.:   19 – cv - 13656

Hon. Thomas J. Ludington

| | |
|---|---|
| Collin H. Nyeholt (P74132) | Anne-Marie Vercruysse Welch (P70035) |
| LAW OFFICES OF | Hannah R. Kendall (P80101) |
| CASEY D. CONKLIN, PLC | CLARK HILL PLC |
| 4084 Okemos Road, Ste B | Attorneys for Defendants |
| Okemos, MI 48864 | 151 S. Old Woodward, Ste 200 |
| (517) 522-2550 | Birmingham, Michigan 48009 |
| collin@caseydconklin.com | (248) 988-1810 |
| | awelch@clarkhill.com |
| | hkendall@clarkhill.com |

___

## AMENDED COMPLAINT
___

Plaintiff, pursuant to and in conformance with Fed.R.Civ.Pr. 15(a)(1)(B), hereby

Amends his Complaint as follows:

1

## JURISDICTION AND VENUE

1. This is a claim for violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 USC § 2000e and Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MCL § 37.2101 *et seq*.

2. Plaintiff RYAN BOSHAW is a permanent resident of Midland, Michigan.

3. Defendant MIDLAND BREWING COMPANY ("Defendant MBC") is a business entity organized under the law of the State of Michigan that regularly does business in the State of Michigan.

4. Defendant DONNA REYNOLDS ("Defendant Reynolds") is the general manager of Defendant MBC.

5. Defendant DAVE KEPLER ("Defendant Kepler") is the owner and manager of Defendant MBC.

6. This claim stems from Defendants' actions towards Plaintiff during the course of his employment that occurred in the State of Michigan.

7. The Court may exercise subject matter jurisdiction over the claims stemming from federal law pursuant to 28 USC § 1331.

8. The Court may exercise jurisdiction over the claims stemming from Title VII pursuant to 42 USC § 2000e-5(f)(3) which provides that a private cause for violation thereof "may be brought in any judicial district in the State in which the unlawful employment practice in alleged to have been committed."

9. The Court may exercise pendent jurisdiction over the state law claims pursuant to 28 USC § 1367.

## **ALLEGATIONS**

10. Plaintiff repeats and re-alleges the factual statements and legal assertions contained in the previous numbered paragraphs as if fully restated herein.

11. Plaintiff was hired as a server with Defendant MBC in May of 2018.

12. Plaintiff's direct supervisor at Defendant MBC was Defendant Reynolds. At all times comprised in this Complaint, she had authority to influence or make the decision to hire, fire (with Kepler's permission), promote, or demote Plaintiff. She also had authority to direct the manner and method of his daily work activities, and to discipline him for his at-work conduct.

13. Defendant Kepler, as owner of Defendant MBC, also exercised supervisory authority over Plaintiff's employment. At all times comprised in this Complaint, he had authority to influence or make the decision to hire, fire, promote, or demote Plaintiff. He also had authority to direct the manner and method of his daily work activities, and to discipline him for his at-work conduct.

14. In September of 2018, Plaintiff was moved to an hourly manager position. In November or December of 2018, Defendant Reynolds spoke to Plaintiff and informed him Defendant Kepler was considering moving him to salary.

15. Plaintiff is a proud, openly gay man.

16. Plaintiff is, and as of the promotional conversation with Reynolds was, in a long term (3-year plus) relationship with another man whom he identifies as his partner.

17. Plaintiff had, prior to this conversation with Defendant Reynolds, publicly indicated on his facebook page that he was in a committed, long-term relationship with this man.

18. Employees at Defendant MBC, including Defendant Reynolds, had access to Plaintiff's facebook page and were able to view his relationship status.

19. During the conversation about Plaintiff's promotion, Defendant Reynolds told Plaintiff "you could be a manager, but I'm not sure how Dave [Defendant Kepler] would view your relationship" or words to that effect.

20. She then suggested that Plaintiff remove his relationship status from his facebook page, remove visible piercings, and style his hair differently. The cumulative effect of these changes would be to hide his status as a homosexual, and appear more stereotypically masculine.

21. After this conversation, Plaintiff proceeded to remove all reference to his sexuality, and his relationship with his partner, from his facebook page.

22. He also began avoiding any public reference to his status as a gay man, or reference to his relationship with his partner.

23. After doing so, Plaintiff was promoted to the position of Front of House Manager.

24. Plaintiff's decision to alter his relationship status created significant issues and turmoil in his relationship with his significant other.

25. Plaintiff would never have chosen to hide his relationship or his sexuality in this manner, if not for Defendant Reynold's conditioning his promotion on so doing.

26. On February 14th, 2019 Plaintiff spoke to Defendant Kepler. Plaintiff related the conversation with Defendant Reynolds where she told him he may not be considered for promotion unless he made her changes to his appearance and began hiding his relationship status and sexuality. He particularly told Defendant Kepler that he felt discriminated against based on his sexuality by this action on Defendant Reynolds' part. Defendant Kepler stated that he would speak to Defendant Reynolds.

27. Defendant Kepler relayed the details of his conversation with Plaintiff, and his complaint of sex-based discrimination, to Defendant Reynolds. Defendant Reynolds, in fact, told Plaintiff that she was offended he had spoken to Kepler, stating she "thought we were friends" or words to that effect.

28. After Plaintiff's complaint to Defendant Kepler, Defendant Reynolds began hyper-scrutinizing his performance at work. Suddenly, he could not seem to do

anything right. Defendant Reynolds would find fault with his every move, and yell and scream at him every day. She also threw away a training manual that he had produced for staff. And, she passed him over for assignment to a managerial role for the Red Keg, an additional business venture engaged in by Defendant Keppler.

29. On or about May 27, 2019 Plaintiff was terminated from his position.

30. Defendant Reynolds recommended the termination. Defendant Keppler approved and ratified the termination.

31. Defendant Reynolds' stated reason for Plaintiff's termination was that he had been absent from a meeting she identified, as well as other undisclosed "other misconduct."

32. Plaintiff can demonstrate that, for the meeting she identified, she had verbally excused his absence.

33. The stated reason for Plaintiff's termination is a demonstrable pretext.

34. Defendant Keppler knew, or should have known, that Defendant Reynolds' stated reason for Plaintiff's termination was factually untrue.

35. On August 30, 2019 Plaintiff initiated a Charge of Discrimination with the EEOC, alleging discrimination based upon sex and retaliation for opposing same. The matter was assigned Charge Number 471-2019-03358 by the EEOC.

36. On September 24, 2019 the EEOC issued a Notice of Right to Sue. This lawsuit follows.

## COUNT 1 – SEX DISCRIMINATION
*In Violation of the Title VII*
**As Against Defendant MBC**

37. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

38. Plaintiff is a "person" and an "employee" as those terms are used in Title VII, 42 USC §§ 2000e(a) and 2000e(f).

39. Defendant MBC was Plaintiff's "employer" as that term is used by 42 USC § 2000e(b).

40. Title VII provides that it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…sex[.]" Title VII's prohibition on discrimination by reason of sex is violated when one makes adverse decisions against an employee based on their actual or perceived failure to conform to gender stereotypes. *Price Waterhouse v. Hopkins*, 490 US 228 (1989). Discrimination based on sexual orientation likewise violates Title VII's prohibition on discrimination because of sex. *Zara v. Altitude Express, Inc.*, 883 F.3d 100 (2nd Cir. 2018) (cert granted); *Hively v. Ivy Tech Community College of Indiana*, 853 F.3d 339 (7th Cir. 2017) (cert granted); *EEOC v. RG & GR Harris Funeral Homes,* 884 F.3d 560 (6th Cir. 2018) (cert granted).

41. There is a gender stereotype that males should only engage in long-term relationships with females, and not with other males. Plaintiff publicly disclosed his long-term relationship with his partner, another male, on his facebook page. Plaintiff's promotion to Front of House Manager was conditioned on his removal of the public disclosure of his relationship, and further nondisclosure of his relationship with a male. Plaintiff, therefore, has suffered discrimination by reason of his failure to conform to gender stereotypes.

42. Plaintiff was informed by his manager and direct supervisor, Defendant Reynolds, that he was disfavored for promotion by reason of his sexual orientation. His promotion to Front of House Manager was conditioned on his agreement not to publicly disclose same. Plaintiff, therefore, suffered discrimination by reason of his sexual orientation.

43. After disclosing his sexual orientation and relationship status to Defendant Reynolds, Plaintiff suffered at-work harassment and intimidation, up to and including wrongful termination. Defendant Keppler allowed Defendant Reynolds to engage in this behavior based, at least in part, on consideration of Plaintiff's failure to conform to gender stereotypes by engaging in a long-term relationship with a male, and based upon his sexual orientation. Plaintiff, therefore, suffered discrimination by reason of his sexual orientation.

44. As a result of the foregoing, Plaintiff has suffered

   a. Lost wages,

   b. Emotional pain and distress,

   c. Attorney's fees in opposing same.

45. Plaintiff is also entitled to punitive damages, by reason of Defendants' willful and wanton conduct described herein.

## COUNT 2 – SEX DISCRIMINATION
*In Violation of Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq*
**As Against Defendants Kepler and Reynolds**

46. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

47. Michigan's Elliott-Larsen Civil Rights Act (the "ELCRA") provides, in pertinent part, that "an employer shall not … [f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of … sex . . ." MCL 37.2202. The ELCRA is largely coextensive with Title VII, with the exception that the statute's's definition of "employer," unlike its federal counterparts, is broad enough to allow for suit against discriminating managers in their capacity as individuals. *Elezovic v. Ford Motor Company*, 472 Mich. 408 (2005). The Michigan Attorney General has, fairly recently, issued guidance indicating that discrimination based upon sexual orientation is comprised

9

in the statute's prohibition on discrimination because of "sex." 6/18/2019 MI AG Op. Letter.

48. Defendant Reynolds, as Plaintiff's manager, is an "employer" as defined by the ELCRA. *Elezovic, supra.*

49. Defendant Keppler, as the owner of Plaintiff's company, and as Plaintiff's superior and manager, is an "employer" as defined by the ELCRA. *Elezovic, supra.*

50. There is a gender stereotype that males should only engage in long-term relationships with females, and not with other males. Plaintiff publicly disclosed his long-term relationship with his partner, another male, on his facebook page. Plaintiff's promotion to Front of House Manager was conditioned on his removal of the public disclosure of his relationship, and further nondisclosure of his relationship with a male. Plaintiff, therefore, has suffered discrimination by reason of his failure to conform to gender stereotypes.

51. Plaintiff was informed by his manager and direct supervisor, Defendant Reynolds, that he was disfavored for promotion by reason of his sexual orientation. His promotion to Front of House Manager was conditioned on his agreement not to publicly disclose same. Plaintiff, therefore, suffered discrimination by reason of his sexual orientation.

52. After disclosing his sexual orientation and relationship status to Defendants, Plaintiff suffered at-work harassment and intimidation, up to and including wrongful termination by Defendant Reynolds.  Defendant Keppler knew about Defendant Reynolds' misconduct and allowed it to continue based, at least in part, on consideration of Plaintiff's failure to conform to gender stereotypes by engaging in a long-term relationship with a male, and based upon his sexual orientation. Plaintiff, therefore, suffered discrimination by reason of his sexual orientation.

53. Plaintiff has suffered damages including:

    a. Lost front pay and benefits, both historical and prospective,

    b. Emotional pain and distress resulting from the mistreatment described herein,

    c. Attorney's fees in opposing age based discrimination.

54. Plaintiff is also entitled to an award of exemplary damages, by reason of Defendants' knowing, intentional, and willful violation of his rights under Michigan Law.

### COUNT 3 –RETALIATION
*In Violation of the Title VII*
**As Against Defendant MBC**

55. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

56. Title VII prohibits discrimination by an employer "against any of his employees or applicants for employment" . . . "because such individual, . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [Title VII]."

57. Plaintiff engaged in activity protected by Title VII when he complained to Defendant Keppler, on February 14, 2019, that he had been subjected to at-work harassment and discrimination based upon his sex.

58. Plaintiff was subjected to unlawful retaliation based, at least in part, upon his complaint when he was

   a. Subjected to hyper scrutiny and harassment by Defendant Reynolds after his complaint to Keppler,

   b. Subjected to a change in attitude and harsher conduct by Defendant Keppler after Plaintiff's complaint and his conversation with Defendant Reynolds about same,

   c. Terminated from his position of employment.

59. Plaintiff has suffered the following damages as a result of the Defendants' violation of his rights:

   a. Lost front pay and benefits,

   b. Emotional pain and distress,

   c. Attorney's fees in opposing said violations.

60. Plaintiff is also entitled to punitive damages, by reason of Defendants' willful and wanton violation of Plaintiff's rights.

**COUNT 4 –RETALIATION**
*In Violation of Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq*
**As Against Defendants Kepler and Reynolds**

61. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

62. Michigan's ELCRA prohibits an employer from retaliating or otherwise discriminating against an employee who opposes a violation of the Act, or participates in an investigation into violation of the same. The ELCRA is largely coextensive with Title VII, with the exception that the statute's's definition of "employer," unlike its federal counterparts, is broad enough to allow for suit against discriminating managers in their capacity as individuals. *Elezovic v. Ford Motor Company*, 472 Mich. 408 (2005).

63. Plaintiff engaged in activity protected by ELCRA when he complained to Defendant Keppler, on February 14, 2019, that he had been subjected to at-work harassment and discrimination based upon his sex.

64. Plaintiff was subjected to unlawful retaliation based, at least in part, upon his complaint when he was

    a. Subjected to hyper scrutiny and harassment by Defendant Reynolds after his complaint to Keppler, and

    b. Terminated from his position of employment.

65. Defendant Keppler knew of, approved, and ratified Defendant Reynolds' harassment, intimidation, and retaliation following his complaint.

66. Plaintiff has suffered the following damages as a result of the Defendants' violation of his rights:

    a. Lost front pay and benefits,

    b. Emotional pain and distress,

    c. Attorney's fees in opposing said violations.

67. Plaintiff is also entitled to exemplary damages, by reason of Defendants' willful and wanton violation of Plaintiff's rights.

## COUNT 5 – CIVIL RIGHTS CONSPIRACY
*In Violation of Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2701 et seq*
**As Against Defendants Kepler and Reynolds**

68. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

69. The ELCRA provides that "two or more persons shall not conspire, or a person shall not…retaliate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint,

testified, assisted, or participated in an investigation, proceeding, or hearing under this act."

70. Plaintiff is a person as defined by the Act.

71. Plaintiff engaged in activity protected by the ELCRA, as described herein, by making a complaint about at-work sex-based harassment and discrimination by his manager, Defendant Reynolds, to Defendant Keppler.

72. Defendants are "persons" as defined by the ELCRA.

73. Defendants, through their actions described herein, coordinated together to retaliate against Plaintiff for engaging in protected activity by

   a. Removing him from his assigned position at Defendant MBC,
   b. Refusing to allow him to work elsewhere, in the kitchen on at Red Keg, and
   c. Terminating him from his position.

74. Plaintiff engaged in activity protected by the ELCRA, as described herein, by complaining to Defendant Keppler, on February 14, 2019, that he had been subjected to at-work harassment and discrimination based upon his sex.

75. Defendants retaliated against Plaintiff by harassing and hyper-scrutinizing him at work and terminating his employment, or approving and ratifying same.

76. Plaintiff has suffered the following damages as a result of the Defendants' violation of his rights:

   a. Lost front pay and benefits,

   b. Emotional pain and distress,

   c. Attorney's fees in opposing said violations.

77. Plaintiff is also entitled to exemplary damages, by reason of Defendants' willful and wanton violation of Plaintiff's rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief from this Honorable Court:

1. ECONOMIC DAMAGES including, but not necessarily limited to, lost front pay and benefits from the paid position he was denied;

2. Such other COMPENSATORY damages as may be appropriate to compensate Plaintiff for Defendant's unlawful conduct;

3. EXEMPLARY damages, in whatever amount the Court should deem appropriate;

4. PUNITIVE damages, in whatever amount the Court should deem appropriate,

5. ATTORNEY'S FEES, in an amount determined reasonable by the Court, so wrongfully incurred in order to remedy the violation of his rights described herein, pursuant to the various statutes identified herein;

6. Pre and post judgment interest at the appropriate statutory rate, and

7. Such other relief as this Court may deem just and appropriate in law or in equity.

## PLAINTIFF REAFFIRMS HIS DEMAND FOR A JURY

Respectfully Submitted,

Dated: 2/20/2020   /s/_____
Collin H. Nyeholt,
Attorney for the Plaintiff